1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AYANNA T. GREENE,

                          Plaintiff,

      v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                    Defendant.

Case No. 3:12-cv-05212-RBL-KLS

REPORT AND RECOMMENDATION

Noted for March 15, 2013

       Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

       On May 4, 2007, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging in both applications that she became disabled beginning

December 31, 2005, due to chronic cervical back pain and severe depression. See Administrative

REPORT AND RECOMMENDATION - 1

Record ("AR") 26, 129, 136, 170.  Both applications were denied upon initial administrative review on August 21, 2007, and on reconsideration on December 10, 2007. See AR 26.  A hearing was held before an administrative law judge ("ALJ") on June 16, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 44-74.

In a decision dated July 15, 2010, the ALJ determined plaintiff to be not disabled. See AR 26-37.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 12, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On March 13, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #3.  The administrative record was filed with the Court on May 30, 2012. See ECF #14.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in failing to obtain a medical expert's opinion regarding medical equivalency; (2) in evaluating both the medical and the lay witness evidence in the record; and (3) in assessing plaintiff's residual functional capacity.  For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be reversed and that this matter be remanded for further administrative proceedings.  Although plaintiff requests oral argument, the undersigned finds such argument to be unnecessary here.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

REPORT AND RECOMMENDATION - 2

applied by the Commissioner, and the "substantial evidence in the record as a whole supports"

that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d

432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record."). "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them.  It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
> not try the case de novo, neither may it abdicate its traditional function of review.  It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.      Medical Expert's Opinion on Medical Equivalency

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098.

"A generalized assertion of functional problem is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).  A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

REPORT AND RECOMMENDATION - 4

equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

The ALJ in this case found plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listings. See AR 29-31.  Relying on SSR 96-6p, plaintiff argues the ALJ erred in so finding because he did not obtain the opinion of a medical expert on the issue of medical equivalence.  SSR 96-6p reads in relevant part as follows:

*Medical Equivalence to an Impairment in the Listing of Impairments.*

REPORT AND RECOMMENDATION - 5

The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. *Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained* at the first two levels of administrative review.

When an administrative law judge or the Appeals Council finds that an individual s impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant. . . .

1996 WL 374180 *3-*4 (internal footnote omitted) (emphasis added).

The undersigned finds no error here.  First, the record contains a psychiatric review technique form completed by Carla van Dam, Ph.D., which contains boxes that can be checked to indicate a claimant's alleged impairments meet or medically equal a Listing impairment. See AR 453.  Given that those boxes were not checked by Dr. van Dam, and that the other findings she set forth in the psychiatric review technique form show that none of plaintiff's alleged impairments met or medically equaled a Listed impairment (see AR 453-65), the undersigned finds the requirements of SSR 96-6p have been satisfied in this case.  In addition, as noted above the ALJ need not compare a claimant's alleged impairments "to any listing in an equivalency

REPORT AND RECOMMENDATION - 6

determination, unless the claimant presents evidence in an effort to establish equivalence." <u>Burch v. Barnhart</u>, 400 F.3d 676, 683 (9th Cir. 2005).  Plaintiff has not done so.

II.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." Batson v.

Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Wingate

The record contains four psychological/psychiatric evaluation forms completed over a

two year period by Terilee Wingate, Ph.D. See AR 249-55, 475-80, 496-502, 507-11.  In the first

two forms she completed, Dr. Wingate assessed mostly moderate to marked mental functional

limitations. See AR 249-55, 475-80.  In her latter two forms, Dr. Wingate assessed a number of

moderate, but no marked, mental functional limitations. See AR 496-502, 507-11.  Plaintiff

argues the ALJ erred by failing to consider any of Dr. Wingate's functional assessments.  The

undersigned agrees.  Those assessments constitute significant probative evidence, which the ALJ

REPORT AND RECOMMENDATION - 8

1    was not free to reject, or in this case ignore, without providing some explanation therefor. See

2    Vincent, 739 F.3d at 1394-95.  This the ALJ did not do.

3         Defendant argues the ALJ did not ignore the evaluation forms completed by Dr. Wingate,

4    because he cited them in his decision.  But to the extent the ALJ did cite those forms, he did not

5    do so for the purpose of considering the actual functional assessments contained therein. See AR

6    29, 34.  Nor does the undersigned find, as defendant also argues, that the functional assessments

7    Dr. Wingate provided are consistent with the mental functional limitations adopted by the ALJ in

8

9    assessing plaintiff's mental residual functional capacity.  That assessment reads:

10        **. . . She is limited to simple, routine, repetitive tasks, not performed in a
          fast-paced production environment, involving only simple, work-related
11        decisions, and in general, relatively few work place changes.  She is
          limited to only occasional interaction with supervisors, co-workers, and
12        the general public.**

13   AR 31-32 (emphasis in original).  For example, the moderate to marked limitations in the ability

14   to learn new tasks and exercise judgment Dr. Wingate found (See AR 251, 477, 499, 508), are

15   not necessarily covered by an assessed ability to perform simple, routine and repetitive tasks or

16   to make only simple, work-related changes.  Nor do any of the ALJ's above restrictions appear to

17   encompass the moderate limitation in controlling physical or motor movements Dr. Wingate also

18   noted. See id.  As such, the undersigned cannot find that the ALJ's error in failing to address Dr.

19   Wingate's functional assessments to be harmless. See Stout v. Commissioner, Social Security

20   Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant

21   or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747

22

23   (9th Cir. 2007) (finding any error by ALJ would not have affected "ALJ's ultimate decision.").

24        B.    Dr. Renn

25        Plaintiff next challenges the following findings made by the ALJ:

26

REPORT AND RECOMMENDATION - 9

. . . [T]he undersigned considered the opinion of the claimant's treating psychiatrist, Dr. Rebecca Renn.  Although Dr. Renn opined in May 2010 that the claimant needs a low-stimulus work environment and to avoid regular work hours due to her mental impairments (Exhibit 36F2), her notes from April 2010 reveal the claimant has recently been inconsistent with her psychotropic medications because she was "sick of taking so many meds" (Exhibit 34F2).  Thus, the undersigned affords little weight to the opinion of the [sic] Dr. Renn as her opinion is not supported by the objective evidence and the record as a whole.

AR 35.  Again, the undersigned agrees the ALJ erred.  First, as plaintiff points out, the ALJ did not discuss the fact that Dr. Renn herself was aware of the inconsistency in taking medications, but nevertheless found plaintiff's mental health condition caused work-related limitations. See AR 1017-18.  Nor does the ALJ discuss other comments Dr. Renn made indicating plaintiff's medications, even when she took them, were not fully effective in treating her symptoms or caused significant side effects. See AR 1018, 1021, 1024; Erickson v. Shalala, 9 F.3d 813, 818-19 (9th Cir. 1993) (ALJ must consider impact side effects of medications have on claimant's ability to work).  Thus, while such inconsistency on plaintiff's part may be a valid basis for discounting *her* credibility, it is not a valid basis for rejecting that of Dr. Renn. See Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (ALJ does not provide clear and convincing reasons for rejecting physician's opinion by questioning credibility of claimant's complaints, where that physician "does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations").  Lastly, again as plaintiff points out, the record contains the opinion of Manfred K. Joeres, M.D., who found an inability to perform full-time work as well (see AR 745), which the ALJ also failed to address, but which provides further support for Dr. Renn's opinion on that issue.[2]

---

[2] Defendant criticizes plaintiff for not providing any supporting argument in regard to the ALJ's failure to address Dr. Joeres's opinion, but does not disagree that the ALJ in fact failed to address it.  Further, given that Dr. Joeres provided an express opinion as to plaintiff's ability to work, that opinion constitutes significant probative evidence the ALJ could not ignore or reject without explanation.  Defendant provides a number of reasons as to why the ALJ

REPORT AND RECOMMENDATION - 10

III.   The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement from plaintiff's mother, in which she indicates that plaintiff suffers from mental functional limitations that make it difficult for her to perform full-time employment. See AR 232. Plaintiff argues, and once more the undersigned agrees, that it was error for the ALJ to fail to address this statement in his decision. As with the opinion of Dr. Joeres, defendant again posits a number of reasons as to why plaintiff's mother's statement could be rejected. None of these reasons, however, were provided by the ALJ. Nor can the undersigned "confidently conclude that no reasonable ALJ, even when fully crediting [plaintiff's mother's] statement, could have reached a differently disability determination" (ECF #30, p. 11), as it is not at all clear that it would have been discredited by the ALJ for the reasons defendant offers, or now should be. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056

---

could have rejected Dr. Joeres's opinion, but none of these were provided by the ALJ, and thus do not form a proper basis for upholding the ALJ's decision here. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss). Nor is it at all clear that the ALJ would have rejected Dr. Joeres's opinion on that basis, and therefore that consideration thereof would not have affected the ALJ's ultimate disability determination. Lastly, defendant points out that while Dr. Joeres stated he was going to write a letter containing his opinion regarding plaintiff's limitation to part-time work, that letter is not actually in the record. But, again, defendant does not dispute that Dr. Joeres was of this opinion – and, indeed, he clearly posits it in his treatment notes (see AR 745) – and, as such, the absence of that letter is of no moment.

REPORT AND RECOMMENDATION - 11

(9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay

testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless

it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

have reached a different disability determination.").

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at

step four to determine whether he or she can do his or her past relevant work, and at step five to

determine whether he or she can do other work. See id.  It thus is what the claimant "can still do

despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is

able to perform based on all of the relevant evidence in the record. See id.  However, an inability

to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

must consider only those limitations and restrictions "attributable to medically determinable

impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ assessed plaintiff with the following mental residual functional

capacity:

   **. . . She is limited to simple, routine, repetitive tasks, not performed in a
   fast-paced production environment, involving only simple, work-related
   decisions, and in general, relatively few work place changes.  She is
   limited to only occasional interaction with supervisors, co-workers, and**

REPORT AND RECOMMENDATION - 12

**the general public.**

AR 31-32 (emphasis in original).  In addition, the ALJ found plaintiff had the physical RFC:

> **. . . to perform light work . . . except she is limited to occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing ramps, stairs, ladders, ropes, or scaffolds. . . .**

AR 31 (emphasis in original).  Plaintiff argues the ALJ erred in assessing the above residual functional capacity, because he did not expressly address the medical evidence in the record concerning her physical capacity.  The undersigned agrees.  Although the record does contain objective medical evidence regarding plaintiff's physical impairments – albeit not much – the ALJ did not actually discuss that evidence in assessing plaintiff's RFC, other than in regard to discounting plaintiff's credibility on the basis of lack of consistent or more aggressive treatment.  See AR 32-34.

Defendant argues the ALJ did address such objective medical evidence, pointing to the summary thereof the ALJ gave in determining the severity of plaintiff's alleged impairments.  See AR 28-29.  But that summary contains no analysis of the evidence discussed therein for purposes of assessing plaintiff's RFC.  In addition, the severity determination that is made at step two of the sequential disability evaluation process is wholly separate from the subsequent assessment that must be made concerning the claimant's residual functional capacity. See SSR 98-6p, 1996 WL 374184 *4 (noting that criteria used to determine impairment severity at step two is "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.").  As such, the ALJ erred in assessing plaintiff's RFC on this basis, as well as on the basis of his errors in evaluating the medical evidence in the record concerning plaintiff's mental impairments and the lay witness statement from plaintiff's mother discussed above.

REPORT AND RECOMMENDATION - 13

1    V.    This Matter Should Be Remanded for Further Administrative Proceedings

2            The Court may remand this case "either for additional evidence and findings or to award

3    benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

4    proper course, except in rare circumstances, is to remand to the agency for additional

5    investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

6    omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

7    unable to perform gainful employment in the national economy," that "remand for an immediate

8    award of benefits is appropriate." Id.

9

10           Benefits may be awarded where "the record has been fully developed" and "further

11   administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

12   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

13   where:

14
              (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
15            claimant's] evidence, (2) there are no outstanding issues that must be resolved
              before a determination of disability can be made, and (3) it is clear from the
16            record that the ALJ would be required to find the claimant disabled were such
              evidence credited.
17

18   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

19   Because issues remain in regard to the medical and lay evidence in the record, and thus in regard

20   to the ALJ's assessment of plaintiff's residual functional capacity and therefore his determination

21   that she is not disabled because she is can perform other work,[3] remand for further administrative

22   proceedings is warranted.

23

24   _____

25   [3] If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation
     process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the
26   claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), §
     416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's
     Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157,
     1162 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 14

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 15, 2013**, as noted in the caption.

DATED this 25th day of February, 2013.

Karen L. Strombom
United States Magistrate Judge

---

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 70. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 70-71. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 36-37. But because, as discussed above, the ALJ erred in his assessment of plaintiff's RFC, the vocational expert's testimony cannot be said to be wholly reliable at this time, and therefore the ALJ's reliance on that testimony to find plaintiff not disabled at step five cannot be upheld.

REPORT AND RECOMMENDATION - 15